IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS ROMAN, | : | CIVIL ACTION NO. 1:25-CV-1042 |
| | : | |
| Plaintiff | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| RAYMOURS FURNITURE CO. INC., | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

If a party signs a contract waiving its right to seek judicial relief in favor of arbitration, it must follow the agreed-upon dispute resolution process. Plaintiff Luis Roman has sued his former employer, defendant Raymours Furniture Co. Inc., for employment discrimination. But when he joined Raymours, Roman signed a voluntary arbitration agreement. That same agreement includes a small exception permitting a court to determine whether an employee complied with the required steps set forth in the agreement. The court concludes Roman's complaint was not in accordance with these steps. All other issues in the case are for an arbitrator to decide, not this court. Therefore, the court will grant Raymours's motion to stay and compel arbitration with the court's procedural finding noted.

**I.      Factual Background & Procedural History**

Roman began working as a delivery truck driver at Raymours in October 2022. (Doc. 1 ¶ 18). When he started at Raymours, Roman signed an Employment Arbitration Program and Agreement (the "Program"). (Doc. 9-4). The Program

requires arbitration for, among other things, claims arising out of Roman's employment at Raymours. (Id. at 1-2). Claims include, among other things, allegations of discrimination and retaliation but exclude "complaints or charges filed with a federal, state, or local administrative agency[.]" (Id. at 2-3). Per the Program, Roman "knowingly and voluntarily waive[d] the right to file, or participate or obtain relief in, a lawsuit against [Raymours] filed in a court[.]" (Id. at 3). Notably, Roman could have, but did not, opt out of the Program, and the Program provides "[a]rbitration is not a mandatory condition of [his] employment." (Id. at 4).

The Program also provides a procedure (the "Claim Limitation Provision") by which Roman was required to file a claim notice ("Claim Notice") and adjudicate the claim, which includes a 180-day period on serving Raymours with a Claim Notice after the claim arises (the "Claim Period"). (Id. at 4-5). The failure to submit a Claim Notice to Raymours within the Claim Period "will forever waive and lose the right to seek relief for that [c]laim." (Id. at 5). Further, the Program explicitly states that "[f]iling an administrative charge or complaint with a federal, state, or local administrative agency is not the equivalent of a Claim Notice and does not extend the Claim Period." (Id.) (emphasis in original). If either Roman or Raymours filed a lawsuit in court asserting a claim subject to arbitration, "the non-filing party may submit a motion to dismiss or motion to compel arbitration to the court and seek to recover its attorneys' fees and costs associated with the motion." (Id. at 6).

"[D]isputes over the enforceability, interpretation, applicability, scope, coverage, and/or terms of this Program, to the maximum extent permitted by law" must be resolved by an arbitrator. (Id. at 2). However, the Program requires a court, not an arbitrator, to determine whether Roman "complied with the required steps of this Program that must be concluded before [he] may assert a Claim in arbitration[.]" (Id.).

Throughout his employment at Raymours, Roman asked his supervisors for Sundays off to attend church services. (Doc. 1 ¶¶ 22, 24, 26-27). His supervisors consistently rejected Roman's requests. (Id. ¶¶ 23, 26, 28, 34). Roman contacted an HR representative about these denials and worried the company "would retaliate against him if he pressed this issue further." (Id. ¶ 36). The HR representative assured Roman no retaliation would ensue and organized a meeting with himself, Roman, Roman's supervisor, and the store manager in November 2023. (Id. ¶ 37-38). Following the meeting, Roman was provided with a religious accommodation form. (Id. ¶ 38).

The next day, Roman was temporarily downgraded from driver to assistant, and the day after that, he was permanently downgraded, which resulted in a significant reduction in Roman's pay. (Id. ¶¶ 39-40). Roman expressed his concerns to the HR representative that his supervisor and the store manager were retaliating against him for his request for religious accommodations. (Id. ¶ 41). He subsequently resigned on November 18, 2023. (Id. ¶ 44).

On May 3, 2024, Roman filed a Charge of Discrimination against Raymours with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (Id. ¶ 7). The EEOC provided Roman with a Notice of Rights to Sue on May 9, 2025. (Id. ¶ 9). Roman subsequently filed a two-count complaint on June 10, 2025, alleging Raymours engaged in religious discrimination, retaliation, and failure to accommodate under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq*, which did not attach or otherwise reference the Program. (See generally Doc. 1). Raymours has moved to dismiss the complaint or, in the alternative, to stay this case and compel arbitration, attaching the Program to its motion. (Docs. 9, 9-4). The motion is fully briefed and ripe for disposition. (Docs. 9-1, 10, 11).

## II.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits

attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, permits judicial enforcement of a contractual arbitration provision after the court "hear[s] the parties" and is "satisfied that the making of the Program for arbitration ... is not in issue[.]" Id. § 4. The court must first consider whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the

agreement." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). There are two paths to make this determination. Young v. Experian Info. Sols., Inc., 119 F.4th 314, 319 (3d Cir. 2024) (citing Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 772–76 (3d Cir. 2013)).

First, if "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain . . . claims 'are subject to an enforceable arbitration clause,'" then the court applies the Rule 12(b)(6) standard. Guidotti, 716 F.3d at 776 (quoting Somerset Consulting, LLC v. United Cap. Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). In these circumstances, the court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Id. at 772 (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

The second path applies the Rule 56 summary judgment standard. Id. at 774. This occurs where (1) "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate," or (2) "the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." Id. In these circumstances, the district court may permit limited discovery on the arbitrability question prior to ruling on the motion to compel. Young, 119 F.4th at 319. Nevertheless, "discovery is not required 'when no factual

6

dispute exists as to the existence or scope of the arbitration agreement.'" Cornelius v. CVS Pharmacy Inc., 133 F.4th 240, 249 (3d Cir. 2025) (quoting Young, 119 F.4th at 320).

## III. Discussion

Raymours moves to dismiss Roman's claims or, in the alternative, to stay the suit and compel arbitration. (Doc. 9). Its central argument is that Roman's claims fall within the Program and that he has waived these claims by failing to file a Claim Notice within the Claim Period. (Id. at 7-11, 17-19). While Roman agrees this matter should be referred to arbitration, he argues the time periods prescribed by the Claim Limitation Provision are unconscionable and thus are unenforceable. (Doc. 10 at 1).

Before addressing the parties' substantive arguments, ordinarily the court must first resolve which standard of review applies to resolve whether "a valid agreement to arbitrate exists." Kirleis, 560 F.3d at 160. Roman's complaint neither attaches nor references the Program, so the Rule 12(b)(6) standard cannot apply. Guidotti, 716 F.3d at 772. Rather, because "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate," the Rule 56 summary judgment standard applies. Id. at 774. At the same time, it is undisputed that the Program is a valid and enforceable arbitration contract. Young, 119 F.4th at 319; Cornelius, 133 F.4th at 249; (see generally Docs. 9-1, 10, 11). Neither party challenges that this "particular dispute falls within the scope of the Program," and that an arbitrator

should resolve this dispute. Kirleis, 560 F.3d at 160; (see generally Docs. 9, 10, 11). Thus, there is no question the Program as set forth in an exhibit to Raymours's motion to compel is a valid arbitration agreement that accurately sets forth the terms of arbitration.

Moving to the merits, the Program provides that a court shall make the initial determination as to whether Roman followed the required steps set forth in the Claim Limitation Provision. (Doc. 9-4 at 2). He did not. Roman resigned from his position at Raymours on November 18, 2023. (Doc. 1 ¶ 44). His Claim Period began, at latest, on that date, so Roman had until May 16, 2024, to send Raymours a Claim Notice. (Doc. 9-4 at 5). It is undisputed that Roman did not send Raymours a Claim Notice by that date.

Roman protests that his 180-day Claim Period arose on May 9, 2025, the date he received his notice of right to sue letter from the EEOC. (Doc. 10 at 10-13). But, as Raymours correctly observes, Roman's argument conflates administrative exhaustion under federal and state law with claim accrual under the Program. (Doc. 11 at 12-13). Roman's claims under the Program are separate from "complaints or charges filed with a state, or local administrative agency[.]" (Doc. 9-4 at 2-3). Additionally, the Program is clear on its face that "[f]iling an administrative charge or complaint with a federal, state, or local administrative agency is not the equivalent of a Claim Notice and does not extend the Claim Period." (Id.) (emphasis in original). Therefore, the notice deadlines imposed by federal and state law are wholly distinct from those prescribed by the Program.

Finally, Roman contends the Claim Limitation Provision is unenforceable because it violates public policy. (Doc 10 at 3-10). However, the Program forecloses this court from addressing Roman's unconscionability argument. That is because the Program explicitly provides that an arbitrator shall resolve "disputes over the enforceability, interpretation, applicability, scope, coverage, and/or terms of this Program, to the maximum extent permitted by law." (Doc. 9-4 at 2). Whether the Program's claim limitation period is unconscionable is a question of enforceability which Roman has expressly agreed to have resolved by an arbitrator. Indeed, the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 65 (2019). The parties have so contracted here, and this court will enforce the terms of this contract. See Rent-A-Ctr., West, Inc. v. Jackson, 561 U.S. 63, 67 (2010) ("The FAA thereby places arbitration agreements on equal footing with other contracts . . . and requires courts to enforce them according to their terms"). In so doing, the court takes no position as to the merits of Roman's argument on this issue.

## IV.     Conclusion

The court finds Roman did not comply with the procedural requirements of the arbitration agreement to which he agreed. His other arguments must be resolved by an arbitrator. Accordingly, the court will grant Raymours's motion to stay and compel arbitration and deny Raymours's motion to dismiss. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:     October 28, 2025